IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,            Case No. 3:02 cr 722

-vs-

                                      MEMORANDUM OPINION

MARK STEVEN MILLER,

                Defendant.

KATZ, J.

This matter is before the Court on the motion of the United States of America to dismiss Petitioner John M. McNally, Jr.'s claims for survival damages and punitive damages. (Doc. No. 439). Petitioner has responded (Doc. No. 463), the Government has replied (Doc. No. 466), and Petitioner has filed a sur-reply (Doc. No. 468). For the following reasons, the Government's motion is granted.

## **Background**

On May 11, 2001, Maevelle P. McNally took a dinner cruise with her family, including her husband John McNally and her son, Petitioner John McNally, Jr., aboard the M/V Stardancer, a casino gaming vessel operating out of Little River, South Carolina, which was owned by Stardancer Casino, Inc. During the cruise, Mrs. McNally took ill and died of a heart attack. Petitioner became the administrator of her estate.

On April 11, 2002, this Court enjoined any person with an interest in the assets of Stardancer Casino, Inc., from encumbering any of its assets. On January 12, 2003, the United States government seized the M/V Stardancer and sold it. On July 8, 2003, the Court ordered the

proceeds forfeited to the United States. On November 10, 18, and 26, 2003, the Government published notice of the Court's forfeiture order in USA Today, in certain markets, instructing anyone with interests in the forfeited property to file a petition within thirty days of the final notice's publication.

On February 2, 2004, Petitioner asserted a maritime tort lien against the proceeds of the M/V Stardancer. The petition sets forth both survivorship and wrongful death claims, and seeks punitive damages. The Government moves for summary judgment on the survivorship claim, calling it untimely, and on the claim for punitive damages, which are not available in a maritime tort claim such as this. The Government does not seek summary judgment on Petitioner's wrongful death claim.

**Discussion**

The Government claims the ticket Mrs. McNally accepted prior to boarding the M/V Stardancer contained a contractual, one-year time limitation for filing certain types of actions, including Petitioner's survivorship claim, and that the provision applies here. Since the statute of limitations is an affirmative defense, the Government bears the burden of proof on that issue. The Court concludes that, on the record as it stands, no reasonable jury could find Petitioner's survivorship claim timely: the Government has presented uncontroverted evidence that the McNallys received the tickets with the limitation clause, and the clause applies here, Petitioner's many arguments to the contrary notwithstanding. Additionally, the Government is correct that punitive damages are not available in this maritime tort action.

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus Co. v. Zenith Radio Corp*. 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belnap*, 154 F. Supp. 2d 1069 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted to judge the evidence or make findings or fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

> Finally, as the Sixth Circuit has explained:
>
> "Rule 56(c) requires the moving party to show not only the absence of a disputed issue of fact but also that he is entitled to judgment as a matter of law. In assessing the sufficiency of the evidence to sustain a particular inference, therefore, the court must also consider the burden of proof on the issue and where it will rest at trial. When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

*Calderone v. United States*, 799 F.2d 254, 258-259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).

*B. The Government's Motion and the Petitioner's Response*

The owner of a sea-going vessel may limit by contract the time for filing a claim based on bodily injury to one-year from the date of the injury. 46 U.S.C. app. § 183b(a). The Government claims the McNallys were given tickets when they boarded the M/V Stardancer that contained such a one-year limitation clause, that the clause is enforceable here, and that the McNallys filed their claim after the period of limitation. In response, the Petitioner raises a multitude of arguments. First, he claims the clause printed on the tickets is not enforceable because Stardancer Casino, Inc., did not do all it reasonably could to inform the McNallys of its attempt to limit the time for filing an action. Second, Petitioner claims the Government has insufficient evidence showing the McNallys actually received the tickets. Third, Petitioner claims the clause on its face does not limit the time in which to bring *in rem* claims like this one, only *in personam* claims against the Company. Fourth, Petitioner claims § 183b does not apply here, and therefore South Carolina's three-year statute of limitations applies. Fifth, Petitioner claims that even if the limitation clause does apply, his claim was timely. Finally, he takes issue with the Government's notification of potential claimants regarding the Stardancer forfeiture. The Government's evidence is sufficient to meet its burden, and all of Plaintiff's arguments fail. The Court concludes that the Government is entitled to summary judgment as a matter of law.

*C. The Reasonableness of the Notice*

Contractual limitations printed on boarding tickets are enforceable when the carrier shows "that it did all that it reasonably could to warn the passengers of its limited liability." *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 219 (6th Cir. 1983). The *Barbachym* court explained:

> Generally, courts have held that a carrier has not made a "reasonable" effort to warn passengers of its liability limitations unless the face of the ticket contains conspicuous

5

> language directing the passenger's attention to the contractual terms contained in other material furnished by the carrier. In contrast, cases in which the carrier's liability limitations have been honored generally involve tickets with conspicuous warnings directing the passenger's attention to the contractual terms contained elsewhere.

*Id*. at 219-20 (citations omitted). "The 'reasonably communicative' test, as applied by the great majority of jurisdictions, does not impose on the shipowner the duty to design the 'best' ticket or an 'ideal' warning. That test requires only that the shipowner employ 'reasonable' means to communicate the importance of the ticket provisions to the passenger." *Euland v. M/V Dolphin IV*, 685 F. Supp. 942, 946 (D.S.C. 1988). "The 'reasonableness' of notice to the passengers of critical terms of carriage contracts is a question of law." *Barbachym*, 713 F.2d at 218.

Courts determining reasonableness generally focus on two separate aspects of the communication. *Wallis ex rel. Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835-36 (9th Cir. 2002). The first is "the physical characteristics of the ticket[, i.e.,] features such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Id*. at 36 (internal quotation omitted). The second is the "circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract. . . . includ[ing] the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id*. (internal quotation omitted).

The multiple-page Stardancer ticket at issue in this case contained on the front cover the words "IMPORTANT NOTICE," above a block of text outlined by a black border and reading:

> The terms and conditions printed here are a revocable license between the passenger and Stardancer Casino, Inc., its agents, employees, and representatives, as owner and operator of the ship, and may be revoked at the sole discretion of Stardancer Casino, Inc., its agents, employees, and representatives. BY ACCEPTING THIS BOARDING PASS AND

6

> REVOCABLE LICENSE YOU AGREE TO THESE TERMS, ESPECIALLY THOSE
> WHICH LIMIT THE TIME IN WHICH TO BRING CLAIMS AND FILE SUIT.

(Doc. No. 440-4, p. 11). Within the Boarding pass was the following clause:

> **Notice of Claim and Time To Sue.** In no event shall the Company be liable in respect to a passenger for any claim unless written notice of the claim is made to the Company's office in care of Stardancer Casino, Inc., 1180 Highway 17, Little River, SC 29566, within six months of the day when the alleged personal injury loss occurred or thirty days of the day when the alleged loss occurred, suits on all claims must be brought within one year of the occurrence.

*Id.* at 12. The McNallys received their tickets a few minutes prior to boarding, but retained the portion containing the notice and the limitation clause during and after the voyage (at which time they certainly knew they had a potential claim).

The Stardancer ticket text is no less conspicuous, clear, and easily read than the notices and clauses in tickets enforced in other cases. *See, e.g.*, *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 10 (1st Cir. 1991); *Lubick v. Travel Services, Inc.*, 573 F. Supp. 904, 906 (D.V.I. 1983)*; Roszak v. Princess Cruises*, 628 N.E.2d 77, 78 (Ohio Ct. App. 1993). Though Petitioner sets forth a laundry list of ways in which the notice and clause could be improved, the standard is one of reasonableness, not of perfection.

Likewise, the circumstances under which the McNallys came by their tickets were no less conducive to familiarity with and incentive to read the contents than those in cases finding the limitation clauses enforceable. *See, e.g.*, *De Carlo v. Italian Line*, 416 F. Supp. 1136, 1137 (S.D.N.Y. 1976) ("It is clear, therefore, that although plaintiff claims she neither saw her ticket nor knew of the limitation provision therein, her agent -- Mrs. Brezinski -- had the ticket in her possession for some time, both prior to and during the voyage. Plaintiff is, accordingly, legally chargeable with notice."); *Collins v. Dolphin Cruise Line*, 625 So. 2d 1308, 1310 and n.3 (Fla.

Dist. Ct. App. 1993) ("The cruise line's issuance of one ticket for both passengers does not excuse Collins' failure to familiarize herself with the terms and conditions of passage; her companion's possession of the ticket is sufficient to charge Collins with notice of its provisions. . . . She could have examined it either before, during, or after the cruise.").

The Petitioner argues that John McNally, Sr.'s limited educational background precluded him from becoming familiar with the ticket's contents. However, the question is whether the *ticket issuer* did all it reasonably could to inform its passengers. The second prong of the inquiry focuses on the ticketing process and on circumstances surrounding the passengers' acquisition and retention of the ticket, not on an individual passenger's ability to understand the ticket. The ticket here clearly stated that "suits on all claims must be brought within one year of the occurrence," a limitation not difficult to understand. In any event, as the Government points out, Petitioner John McNally, Jr., who accompanied Mrs. McNally on the voyage and became the personal representative of her estate, has completed some post-secondary education, and is certainly not "uneducated."

The Court finds that the ticket, the cover of which boldly and specifically alerted the McNallys that it contained a contractual limitation on the time to sue, and the issuance of that ticket to the McNallys in a form they could peruse immediately before, during, and after the cruise, amounts to reasonable notice.

*D. The McNallys' Receipt of the Tickets*

The Petitioner next claims the Government has not presented evidence showing that Mrs. McNally actually received the ticket, and, therefore, she was not bound by the limitation clause it contained. However, the Government has presented through affidavits and business records

8

evidence that: (1) Stardancer's custom was to admit on board only passengers presenting tickets (Doc. No. 440-2, p. 3 (affidavit of Stardancer's ticket office supervisor)); (2) Stardancer kept only the ticket covers, leaving the portion containing the limitation clause and other contractual provisions with the passenger, *id*.; (3) the McNallys received tickets marked with individual and unique serial numbers, *id*. at 4; and (4) the tickets with those numbers contained the limitation clause at issue (Doc. No. 440-4, pp. 2-3, 12 (affidavit of ticket printing company owner)). The Government's circumstantial evidence is sufficient for a jury to conclude that Mrs. McNally received a ticket containing the clause at issue. *See Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 9 (1st Cir. 1991) (finding no issue of fact regarding the plaintiff's receipt of the ticket where the cruise line's claims manager averred that the standard ticket process required passengers to present the ticket for boarding, after which the passenger retained the contractual provisions, and the defendant presented a sample copy of the ticket in question); *Roszak v. Princess Cruises*, 628 N.E.2d 77, 81 (Ohio Ct. App. 1993) (finding no issue of fact regarding the plaintiff's receipt of a ticket containing the contractual passage at issue where the defendant presented a sample ticket and its employee averred that the tickets were sent to every passenger).

Moreover, since Petitioner presents no evidence to the contrary (curiously, not even an affidavit from one of the surviving McNallys stating that they did not receive the tickets), the Government's evidence preponderates, entitling it to summary judgment on the issue of receipt. As stated above, this is so even if Mrs. McNally's husband or son, or another McNally family representative, actually received the tickets for the entire party, and never actually handed Mrs. McNally her ticket. *DeCarlo*, 416 F. Supp at 1137; *Collins*, 625 So. 2d at 1310 and n.3.

9

The Petitioner takes issue with the Government's evidence. He argues that: (1) the statements of the Stardancer employee and the printer are inadmissible because those witnesses lack personal knowledge of what happened on the day in question; (2) the Government's conduct puts into question the authenticity of the Government's documentary evidence; and (3) the Government's evidence actually shows the normal boarding procedure was not followed the day Mrs. McNally died, because the records list John McNally, Jr.'s address for all of the McNallys, rather than their individual addresses, though the ticket office supervisor said each passenger's address was recorded. None of these arguments are well-taken, particularly the last, which is nonsensical and absurdly litigious: clearly *an* address was recorded for Mrs. McNally, and the fact that it was her son's, as representative of the party, and not her own, has absolutely nothing to do with whether she or her representative received a ticket containing the limitation clause at issue.

As to the argument that the ticket office supervisor and the printer lack personal knowledge about what happened the day Mrs. McNally died, the Court agrees. Indeed, those affiants do not claim to have personal knowledge of the events of that day. Rather, they have personal knowledge of Stardancer Casino's *standard ticketing procedure*, and of the *contents* of the particular, numbered tickets Stardancer records show the McNallys were issued, which amounts to *circumstantial evidence* of what happened on the day in question. All that is required is that the affiant have personal knowledge of that as to which he or she swears, and such knowledge is apparent here. Petitioner's real quarrel is with the use of testimony about standard practices to support a conclusion that those practices were followed in the McNallys' case. However, the case law indicates that the jury may draw such an inference in the absence of evidence to the contrary, as is the case here.

As to the Government's conduct making the authenticity of the documentary evidence uncertain, Petitioner complains of the following: (1) FBI Agent John Crawford testified that he sent the ticket office supervisor a three-page declaration with no attachments to review and sign, yet the declaration now has six pages of attachments; (2) Agent Crawford was instructed in his deposition not to answer questions about whether he left out of the ticket office supervisor's or the printer's declarations any information he learned from them; (3) Agent Crawford cannot say from which boxes of Stardancer materials the business records the Government relies upon came, nor testify to the "chain of custody" of those materials. These arguments provide no reason for the Court to find the Stardancer business records, including the passenger manifest for May 11, 2001, and copies of the covers of the boarding passes issued to the McNallys, lacking in authenticity or reliability. Whether those documents were attached to the declaration Agent Crawford sent to her or not, the company's ticket office supervisor identified the documents by individual Bates stamp number, indicated she had reviewed them, and averred that she recognized them as Stardancer business records kept in the ordinary course of business. Because the ticket office supervisor (and the printer) authenticated the documents referenced in their affidavits, the "chain of custody" is irrelevant, as is Agent Crawford's testimony about whether or not those witnesses divulged more to him than he included in their declarations. Petitioner was free to secure his own declarations from those witnesses, and did so from the ticket supervisor. His objections to the Government's documentary evidence are meritless.

*E. The Application of the Limitation Clause to Proceedings in Rem*

The Petitioner's claim before this Court is one brought in rem against the M/V Stardancer herself, or, more specifically, her proceeds.[1] *See, e.g.*, *Usher v. M/V Ocean Wave*, 27 F.3d 370, 373 (9th Cir. 1994) ("Courts have long recognized liens in connection with maritime personal injury claims generally."). Petitioner claims the limitation printed in the M/V Stardancer ticket applies only to suits filed against Stardancer Casino, Inc., in personam, but not against the M/V Stardancer in rem.

However, while the limitation clause itself begins, "[i]n no event shall *the Company* be liable . . . ," the clause immediately preceding it defines "the Company" as "Stardancer Casino, Inc., *and the vessel*, and their agents and employees." (Doc. No. 440-4, p. 12) (emphasis added). The clause limiting "suits on all claims" to one year therefore applies to this action in rem.

### *F. The Application of § 183b*

Section 183b(a) forbids the owner of a sea-going vessel "transporting passengers . . . from or between ports of the United States and foreign ports to provide by . . . contract . . . a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred." 46 U.S.C. app. § 183b(a). Petitioner claims this provision does not bar his survivorship action in this case because: (1) the section expressly does not apply to "trips to nowhere," i.e., those leaving and returning to the same port,

---

[1] The Petitioner claims that "The Estate has filed an in rem claim against [the M/V Stardancer] and an in personam claim against Stardancer Casino." (Doc. No. 463-1, p. 19). The Court presumes Petitioner meant to indicate that the in personam claim is pending elsewhere, because Mr. McNally's Petition before this Court states only a claim to proceeds from the vessel, and lists only the Petitioner and the vessel as parties. It does not (and indeed could not) purport to state any claim against Stardancer Casino, Inc., in personam.

like the McNallys' dinner cruise; (2) Section 183b(b) provides that claims are not barred if the vessel's owner had knowledge of the injury; and (3) Section 183b(c) provides that the limitations period does not run while no legal representative has been appointed for the decedent's estate. Petitioner's arguments are all without merit.

### 1. Trips to Nowhere

Section 183b(a) applies to trips "from or between ports of the United States and foreign ports." Courts construe this language to mean "from ports of the United States, or between ports of the United States, and foreign ports." *Burstein v. United States Lines Co.*, 134 F.2d 89, 91 (2d Cir. 1943) (internal quotations omitted). Since the M/V Stardancer departed from a United States port (and returned to the same port), Section 183b applies here.

### 2. Owner's Actual Knowledge of the Claim

Section 183b(b), entitled "Claims not barred by *failure to give notice*," provides that, "*[f]ailure to give such notice* [as required by Section 183b(a)], where lawfully prescribed in such contract, shall not bar any such claim . . . [i]f the owner or master of the vessel or his agent had knowledge of the injury, damage, or loss and the court determines that the owner has not been prejudiced by the *failure to give such notice* . . . ." 46 U.S.C. § app. 183b(b) (emphasis added). This section expressly applies only to the provisions of Section 183b(a) relating to notice, not to those relating to the time for filing suit. It therefore does not apply here.

### 3. Personal Representative

Section 183b(c) provides that, "if a person who is entitled to recover on any such claim is mentally incompetent or a minor, or if the action is one for wrongful death, any lawful limitation of time prescribed in such contract shall not be applicable so long as no legal representative has been

13

appointed for such incompetent, minor, or decedent's estate, but shall be applicable from the date of the appointment of such legal representative." 46 U.S.C. § app. 183b(c). Here, the Petitioner is not mentally incompetent, nor is he a minor, and the Government's motion applies to his claim for survivorship damages, not wrongful death, so Section 183b(c) also has no application. Petitioner's arguments regarding the application of Section 183b are baseless.

*G. The Timeliness of the McNally Petition*

Mae McNally died on May 12, 2001. On April 11, 2002, this Court enjoined the encumbrance of Stardancer Casino, Inc.'s assets. On July 7, 2003, the Court ordered those having claims against the seized assets to file them by December 26, 2003. Petitioner filed his claim on February 2, 2004. Petitioner posits that, even if the contractual limitation clause and Section 183b do apply, his claim was timely, because South Carolina law tolled the one-year statute of limitation for eight months following Mrs. McNally's death, and because this Court's April 11, 2002, order also suspended the limitations period until at least December 25, 2003. Petitioner is incorrect: the South Carolina provision does not apply, and even if the April 11, 2002, order suspended the limitations period, any such suspension lasted only until July 7, 2003, at the latest, in which case the survivorship portion of the petition, filed on February 2, 2004, was untimely.

In South Carolina, "[t]he running of any statute of limitations on a cause of action belonging to a decedent which had not been barred as of the date of his death is suspended during the eight months following the decedent's death but resumes thereafter unless otherwise tolled." S.C. Code Ann. § 62-3-109. However, a cruise ticket is a maritime contract, so "the substantive law to be applied in this case is the general federal maritime law." *Milanovich v. Costa Crociere, S.P.A.*, 954 F.2d 763, 766 (D.C. Cir. 1992). This includes the federal law governing statutes of

14

limitation. *Vavoules v. Kloster Cruise, Ltd.*, 822 F. Supp. 979, 982 (E.D.N.Y. 1993) ("[A] passenger cruise ticket is a maritime contract and the limitations law to be applied in a personal injury action is federal maritime law."). Federal maritime law lacks such an eight-month tolling provision, and to enforce South Carolina's here would undermine the uniformity that is the goal of that law, s*ee Scheibel v. Agwilines, Inc.*, 156 F.2d 636, 638 (2d Cir. 1946) ("[S]ection 183b . . . is a declaration of Congressional policy as to lawful contractual time limitations and one which in the interest of uniformity should be construed to exclude state statutes of limitation.").

Without the eight-month delay in the limitation period's commencement, it began to run eleven months before this Court enjoined the encumbrance of Stardancer Casino, Inc.'s assets. Assuming, without deciding, that Petitioner is correct and the Court's injunction did toll the statute of limitations, the period would have resumed no later than the Court's July 7, 2003, order, or the time Petitioner reasonably should have learned of that order. *See, e.g.*, *Davis v. Wilson*, 349 F. Supp. 905, 906 (E.D. Tenn. 1972) *aff'd without opinion*, 471 F.2d 653 (1972) ("[T]here is a broad rule that, whenever some paramount authority prevents a person from exercising his legal remedy, the time *during which he is thus prevented* is not to be counted against him in determining whether the statute of limitations has barred his right.") (emphasis added). Yet, more than one month elapsed between that time and Petitioner's filing, and eleven had already elapsed before the Court's injunction. Therefore, even if the Court's July 7, 2003, order tolled the limitations period by preventing Petitioner from bringing suit or filing a claim, Petitioner's survivorship claim was untimely.

***H. The Government's Notification of the McNallys***

The Petitioner argues that the Government failed to provide the McNally estate with constitutionally adequate notice of the forfeiture proceedings, and that this precludes summary judgment on the issue of timeliness. Without addressing the appropriateness of the latter postulation, the Court concludes the Government's notice was sufficient.

Petitioner claims the Government's notice failed to satisfy the Constitution's due process requirements and violated this Court's order to provide notice because: (1) the Government knew of the McNally's claim yet did not mail notice to them personally, instead publishing notice in USA Today; and (2) the Government published only in USA Today's North Florida, South Florida, Cleveland, Detroit, and the Carolinas markets, rather than in all markets across the country.

The Court first notes that though its order required publication in USA Today, it did not require, but rather merely permitted, notice by mail to persons then known to have an interest in the seized property; thus, failure to mail did not violate the Court's order. Constitutionally, the Government's notice must have been "reasonably calculated" to apprise potential claimants of the forfeiture. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). And while notification by publication is constitutionally insufficient as to those claimants whose names and addresses are known or are "very easily ascertainable," *id*. at 175 (internal quotation omitted), there is no indication here that the Government knew about the McNallys or had reason to search through the "mountain" of documents seized from Stardancer Casino, Inc., to discover the July, 2001, handwritten notes indicating that an insurance representative had asked about their case. In short, whether or not the Company's insurer had "closed its file" on the McNally claim, as the

16

Government alleges and the Petitioner denies, there is no affirmative evidence that the Petitioner's name and address were known by or "very easily ascertainable" to the Government.

Finally, the Petitioner's argument that notice was constitutionally deficient as to him because the Government published only in certain markets lacks any hint of reasonableness, since the Petitioner is located in one of those markets, the Carolinas. In sum, the Government provided notice that was constitutionally adequate under the circumstances, so Petitioner's argument that improper notice precludes summary judgment is meritless, as are his other arguments against summary judgment on the survivorship claim.

Indeed, since the Government's evidence is sufficient to support a finding that the McNallys received tickets with the limitation clause at issue, and since there is absolutely no evidence to the contrary; since Stardancer Casino, Inc., provided reasonable notice of the limitation; and since the applicable clause supports the enforcement of the clause, summary judgment in favor of the Government on Petitioner's survivorship claim is appropriate.

*I. The Availability of Punitive Damages*

Finally, as stated above, Petitioner's claim is one brought in rem against the vessel. Claims for punitive damages may not be brought in this fashion. *Hunley v. ACE Maritime Corp.*, 927 F.2d 493, 496 (9th Cir. 1991) ("[A] claim for punitive damages does not give rise to a maritime lien."). Proceedings in rem are designed only to secure actual damages. *Id*. Therefore, the Government is entitled to summary judgment on Petitioner's claim for punitive damages.

## **Conclusion**

For the foregoing reasons, the Government's motion for summary judgment on Petitioner's survivorship and punitive damages claims (Doc. No. 439) is granted. Petitioner's motion for reconsideration (Doc. No. 478) is denied.

IT IS SO ORDERED.

                                                   S/ *David A. Katz*
                                                   DAVID A. KATZ
                                                   U. S. DISTRICT JUDGE